**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

REGINALD STINSON,              :
AIS # B1204652                 :
    **Plaintiff,**        :
                               :
vs.                            :         CIVIL ACTION 12-00270-CB-B
                               :
KENNETH TYUS, *et al*.         :
    **Defendant.**       :
                               :


## REPORT AND RECOMMENDATION

Plaintiff Reginald Stinson, an Alabama prison inmate who is proceeding *pro se* and *in forma pauperis,* filed the instant action alleging violations of 42 U.S.C. § 1983. This action was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4), and is now before the undersigned on Defendants Kenneth Tyus, Associate Commissioner of Operations James DeLoach, Warden Tony Patterson, III, Russell Johnson, Christopher Kimbrel, Joel Broadhead, David Leggett, and Johnny L. Johnson's Motion for Summary Judgment (Docs. 23, 24, 37, 38, 46) and Plaintiff's response in opposition(Doc. 52). After careful consideration of these pleadings, and for the reasons set out below, it is recommended that Defendants' Motion for Summary Judgment be granted, that Plaintiff's federal claims against Defendants be dismissed with prejudice, and

that Plaintiff's state-law claim against Defendant Tyus be dismissed without prejudice.

## I. SUMMARY OF MATERIAL FACTS

Stinson filed this action on April 17, 2012 (Doc. 1) alleging excessive force, failure to protect and denial of medical care. Stinson is, and was at the time of the reported incident, incarcerated at Holman Correctional Facility ("Holman") serving a life sentence without parole for a 2002 conviction for capital murder. (Doc. 1 at 4, 9). Defendants Tyus, R. Johnson, Kimbrel, Broadhead, Leggett, and J. Johnson all served as correctional officers at Holman, while Defendant Patterson served as the warden at Holman, and Defendant DeLoach served as the Commissioner of the Alabama Department of Corrections during the period alleged in the complaint.

In support of his claims, Stinson alleges that around 12:40 a.m. on February 4, 2012, Officer Capps entered Stinson's dorm unit, B-dorm, to get a "clipper guard" used for hair trimming, when an inmate in the dorm yelled, "Officer Capps let me nut in your head." (Doc. 52 at 2). Officer Capps ordered the inmate to stop yelling disrespectful comments, but the inmate repeated the insult.

(Id.). Officer Capps called out for Officer Yowell's help, but instead of responding solely to the need for assistance, Officer Yowell radioed for help and "about ten officers came running down to "B-dorm". Officer Capps identified Stinson as the inmate who made the comments, and as a result, Stinson was escorted to the shift office where Lieutenant Craft was informed of the incident. (Id.). Lieutenant Craft instructed Defendant J. Johnson to place Stinson in the Hospital Holding Cell ("HHC"). (Id.).

According to Stinson, J. Johnson ordered him to place his hands on the cell bars of the HHC, and after Stinson complied, J. Johnson initiated a pat search of Stinson. (Doc. 52 at 2). J. Johnson then instructed Stinson to enter the HHC; however, officer Tyus interrupted, and commanded Stinson to put his hands back on the cell bars. Tyus then proceeded to pat search Stinson. While pat searching Stinson, Tyus punched him in the ribs twice and in the groin area three times. (Doc. 52 at 8). Stinson also contends that Tyus was simultaneously yelling "tell another one of my officers you going to nut in they heads." (Doc. 52 at 2) (emphasis omitted). Stinson further asserts that there was no reason for Tyus' action because he was not resisting or attacking anyone. (Doc. 1 at 6). In addition,

Stinson maintains that various officers, including named Defendants, J. Johnson, Kimbrel, Broadhead, Leggett, and R. Johnson, witnessed Tyus strike him several times and they failed to intervene or protect him.[1] (Id. at 7-8). Stinson asserts that he was released from the HHC without receiving a "body chart" and that he was denied medical attention for his injuries until later that afternoon.[2] (Id. at 4).

Stinson further alleges that Warden Patterson and Associate Commissioner DeLoach failed to protect him after each was informed of the assault through complaints lodged by Stinson.[3] (Id. at 6-7). Stinson avers that Defendants violated his Eighth and Fourteenth Amendments and caused him permanent damage and psychological trauma. He also asserts state assault and battery claims against Tyus, and seeks compensatory and punitive damages from each Defendant

---

[1] According to Stinson, inmates Thabiti Unika Hill, Dale Anthony Sanders and Tremaine Riley were all being held in the HHC at the time of the incident, and they witnessed the assault. (Doc. 1 at 4).

[2] Stinson vaguely alleges that Defendants "failed to allow [him] medical treatment" and that when he "informed Capt. Howard of the incident" later that morning, she ordered Tyus to take Plaintiff to the medical unit and to "receive a Body Chart." (Doc. 1 at 4).

[3] Stinson admits that Captain Powers asked him to compose a written statement regarding the incident; however, Stinson states that it was "to no avail" because there was no response to his past grievances and no action was taken against the Defendants. (Id.)

in his individual capacity. (Id. at 4, 10). Stinson also requests a review of the current procedures and training of officers regarding the use of force, and the initiation of criminal charges against Defendant Tyus. (Id. at 10).

In their Answers and Special Reports filed on January 22, 2013 and September 9, 2013, Defendants deny Stinson's allegations and assert the defenses of absolute, qualified, and sovereign immunity. (Doc. 23 at 8-17; Doc. 38 at 6, 8-16). On November 25, 2013, the Court entered an Order converting Defendants' Special Reports and Answers into a Motion for Summary Judgment. (Docs. 23, 24, 27, 37, 38, 46). Stinson subsequently filed a request for documents, including his prison file, medical records, all evidence relating to his claim, and a copy of the rules and regulations relating to the use of force in the prison institution. (Doc. 40). The Court granted Stinson's motion, in part, and ordered Defendants to produce Stinson's complete medical file, disciplinary documents, grievance related documents and all investigative materials related to Plaintiff and his complaint; however, because Defendants assert that the alleged assault never occurred, Defendants were not ordered to produce the rules and regulations of the prison as they were deemed immaterial to

the action.  (Doc. 42).  As directed, Defendants produced the responsive documents, under seal, on December 9, 2013 (Doc. 46).  On February 5, 2014, Stinson filed a response in opposition to Defendants' Motion for Summary Judgment. (Doc. 52). In his response, Stinson reiterates the claims stated in his complaint, and included a statement signed by Thabiti Hill, a fellow inmate.[4]  (Id.).  Defendants' motion has been fully briefed, and is now ripe for resolution.

**III.       SUMMARY JUDGMENT STANDARD**

Summary Judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); Garczynski v. Bradshaw, 573 F.3d 1158, 1165 ("[S]ummary

---

[4]     Attached to Stinson's response in opposition to Defendants' Motion for Summary Judgment is a written statement signed by Thabiti Hill, an inmate who claims he witnessed the alleged assault on February 4, 2012.  (Doc. 52 at 8).  Thabiti Hill states he saw Tyus, J. Johnson, Broadhead, and Leggett escort Stinson to the holding cell, then J. Johnson pat searched Stinson, followed by Tyus. (Id.).  Hill states he witnessed Tyus "punch inmate Stinson in the ribs twice and in the groin area several times while inmate Stinson held on to the cell bars" while the other officers watched.  (Id.).  However, this statement is unsworn and unnotarized.  (Id.).

judgment is appropriate even if 'some alleged factual dispute' between the parties remains, so long as there is 'no *genuine* issue of *material* fact.")

> The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." <u>Id.</u> at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing, or pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. <u>Id.</u> at 322-24.
>
> Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" <u>Id.</u> at 324. To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. <u>See</u> <u>Anderson</u>, 477 U.S. at 255.

<u>ThyssenKrupp Steel USA, LLC v. United Forming, Inc.</u>, 2013 U.S. Dist. LEXIS 28034, *5-7, 2013 WL 765314, *1-2 (S.D. Ala. Jan. 29, 2013) (citations omitted).

In considering whether the defendants are entitled to summary judgment in this case, the Court has viewed the facts in the light most favorable to the plaintiff. <u>Comer v. City of Palm Bay, Florida</u>, 265 F. 3d 1186, 1192 (11th Cir. 2001) ("We view the evidence and all factual inferences raised by it in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in favor of the non-moving party.").

The requirement to view the facts in the nonmoving party's favor extends only to "genuine" disputes over material facts.  A genuine dispute requires more than "some metaphysical doubt as to material facts."  A "mere scintilla" of evidence is insufficient; the nonmoving party must produce substantial evidence in order to defeat a motion for summary judgment. <u>Garczynski</u>, *supra*, 573 F.3d at 1165 (internal citations omitted).  In addition, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." <u>Resolution Trust Corp. v. Dunmar Corp.</u>, 43 F.3d 587, 599 (11th Cir. 1995). More importantly, where "opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for

purposes of ruling on a motion for summary judgment." <u>Scott v. Harris</u>, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007); <u>see also</u> <u>Logan v. Smith</u>, 439 Fed. App'x 798, 800 (11th Cir. Aug. 29, 2011) ("In cases where opposing parties tell different versions of the same events one of which is blatantly contradicted by the record—such that no reasonable jury could believe it—a court should not adopted the contradicted allegations." (citations omitted)).[5]

## IV. DISCUSSION

As noted above, Stinson seeks redress pursuant to 42 U.S.C. § 1983 for a constitutional deprivation arising out of an alleged physical confrontation between himself and Correctional Officer Tyus that took place on February 4, 2012, outside of the Hospital Holding Cell at Holman Correctional Facility. (Doc. 1). Stinson alleges that Defendant Tyus used excessive force when he allegedly hit Stinson twice in the ribs and three times in the groin area while conducting a pat search. Stinson maintains that he did not do anything to provoke Tyus' action.

---

[5] "Unpublished opinions are not considered binding precedent, but may be cited as persuasive authority." 11th Cir. R. 36-2.

Defendants, on the other hand, deny that excessive force was used against Stinson and further assert the defenses of absolute, qualified and sovereign immunity.[6] (Docs. 23, 38). In their affidavits, Defendants admit that on February 4, 2012, officer Tyus went to Housing Unit B to secure a haircut after completing his shift at approximately 12:50 am, and that he observed a group of inmates gathered near the rear of the dorm, and heard one yell out a derogatory remark about nutting in Capps' head. Capps signaled officer Yowell to the rear of the room, and

---

[6] Plaintiff Stinson is suing each defendant in his individual capacity. (Doc. 1 at 10). Therefore, the absolute immunity against suits from damages that state officials are entitled to in their official capacities is not applicable in this action. Harbert Int'l, Inc. v. James, 157 F.3d 1271, 1278 (11th Cir. 1998) (state officials sued in their official capacities are protected from suit for damages under the Eleventh Amendment).

However, "[q]ualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Dalrymple v. Reno, 334 F.3d 991, 994 (11th Cir. 2003) (quoting Hope v. Pelzer, 536 U.S. 730, 739, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002)). With respect to Stinson's Eighth Amendment excessive force claims, qualified immunity does not apply. See Skrtich v. Thornton, 280 F.3d 1295, 1301 (11th Cir. 2002). With respect to Plaintiff's Eighth Amendment claims related to his medical treatment, the Court has found that Stinson's allegations do not establish a constitutional violation. Therefore, "there is no necessity for further inquiries concerning qualified immunity" with respect to those claims. Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001).

Yowell in turn called for assistance via the two-way radio. Because the comment came from the area in which Stinson was standing, Stinson was escorted from the dorm to the hospital holding cell by officer Tyus. Outside the holding cell, J. Johnson began conducting a pat down search of Stinson; however, due to a back condition, Johnson was limited in his ability to bend down. Thus, Tyus took over the pat search, and at one point, he noticed that Stinson appeared to shift his weight when Tyus went to search under Stinson's groin area. As a result, Tyus repeated the search, which revealed no contraband. Stinson was then placed in the cell while Tyus investigated the incident. Capps relayed to him what had occurred in the dorm area, and indicated that while he believed that it was Stinson who made the derogatory comment, he was not positive. Thus, Stinson was counseled and returned to the dorm area. (Docs. 23, 38).

The record reflects that Stinson reported to Captain Powers on February 5, 2012, that he had been assaulted by Tyus on February 4, 2012, and that he did not receive a medical assessment until one was ordered by Captain Ronzella Howard on February 4, 2012 around 2:10 a.m. (Doc. 23-4). Powers investigated and found that an incident

report had been completed, but he questioned whether all of the policies and procedures had been filed since there was no record of Capps having purchased a haircut ticket which would have permitted him to be in the dorm area, and Stinson alleged he reported the assault to Lt. Craft at 5:20 a.m. on the date of the incident; however, no medical assessment was completed until nearly five hours later at 2:10 p.m. Powers concluded that it was Stinson's word against the officers, and that there was no documentation substantiating Stinson's claims.

Indeed, the medical records reveal Stinson was examined by the nursing staff at Holman at 2:10 p.m., February 4, 2012, following the alleged assault. (Doc. 46-2 at 3). Stinson reported to the medical staff that he had been assaulted by an officer at 12:40 a.m. and was hit in the right-side ribs and groin. (Id.). Upon examination of Stinson, however, the nurse noted "no distress" and "no physical marks" on Stinson, and he was instructed to sign up for sick call if needed. (Id.). The following day, Stinson was reexamined after complaining that his right-side ribs had been hurting for two days. (Id. at 5). Again, however, there was "no bruising/injury noted" by the nurse, Stinson exhibited a full range of motion, and when

the nurse pressed on the complained of area, "no grimacing" was noted. Stinson was prescribed Ibuprofen for his complaints of pain. (Id.). Stinson was subsequently seen on February 11, 2012, February 12, 2012, March 2, 2012, March 6, 2012, March 21, 2012, April 19, 2012, May 22, 2012, and July 15, 2012, for complaints of rib and testicle pain but there was never any swelling or visible signs of injury found, and each sick call form or complaint included a request for more pain medication, which was always prescribed.[7] (Doc. 46-1 at 30, 45-48, 51; Doc. 46-2 at 1-2, 51). Stinson also received two diagnostic tests following the alleged assault. First, an x-ray of Stinson's right ribs was conducted on February 13, 2012. The x-ray revealed that Stinson's ribs were normal with no fracture or dislocation. (Doc. 46-2 at 24). Second, an ultrasound of Stinson's testicles was performed on March 19, 2012, and revealed no abnormalities that required treatment.[8] (Id. at

_____

[7]    Notably, the record reflects that in addition, Stinson was provided his annual medical assessment on June 12, 2012. During this evaluation by the medical staff, Stinson refused a testicular exam and stated he was not having any medical problems at that time. (Doc. 46-1 at 5, Doc. 23-5 at 5).

[8] A small right hydrocele and a minimal left hydrocele were detected by the ultrasound. (Doc. 46-2 at 23). There was no evidence of testicular mass, torsion, orchitis, or varicoceles. (Id.). "A hydrocele is a painless buildup of watery fluid around one or both testicles that causes the

13

23). Stinson made no further complaints of rib or testicular pain after July 15, 2012. (See Doc. 46-1, Doc. 46-2).

**A.   Stinson's Eighth Amendment Excessive Force Claim.**

In addressing Stinson's claims brought under § 1983, the Court begins its analysis "by identifying the specific constitutional right allegedly infringed by the challenged application of force." Graham v. Connor, 490 U.S. 386, 394, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989).   Although Stinson has raised these claims under the Eighth and Fourteenth Amendments, it is the Eighth Amendment that applies here.   The Eighth Amendment, which attaches "after conviction and sentence," protects incarcerated prisoners, like Stinson, from punishment that is "cruel and unusual." Id. at 392 n.6, 394.   Specifically, The Eighth Amendment's prohibition against cruel and unusual punishment, U.S. Const. amend. VIII, governs the use of force by prison

---

scrotum or groin area to swell."   WebMd, http://www.webmd.com/parenting/baby/tc/hydrocele-topic-overview (last visited September 12, 2014).   "Hydroceles are not usually dangerous and are treated only when they cause pain or embarrassment or when they decrease the blood supply to the penis (rare).   Treatment is not usually needed if a hydrocele does not change in size or gets smaller as the body reabsorbs the fluid."   Id.   Hydroceles "can be the result of cancer, trauma (such as a hernia), or orchitis." Wikipedia, http://en.wikipedia.org/wiki/Hydrocele (last visited September 12, 2014).

officials against convicted inmates. Campbell v. Sikes, 169
F.3d 1353, 1374 (11th Cir. 1999). In order to establish an
Eighth amendment excessive force claim against Tyus,
Stinson must prove both an objective and subjective
component. That is, he must show that the alleged
wrongdoing was objectively "harmful enough" to establish a
constitutional violation and that the Defendants "act[ed]
with a sufficiently culpable state of mind", i.e., that the
defendant acted "maliciously and sadistically to cause
harm." Hudson v. McMillian, 503 U.S. 1, 7, 112 S. Ct. 995,
117 L. Ed. 2d 156 & 8, 112 S. Ct. 995, 999, 117 L. Ed. 2d
156 (1992) (citations omitted).

Subjectively, Stinson must establish that "force was
applied. . .maliciously and sadistically to cause harm[,]"
as opposed to being applied "in a good-faith effort to
maintain or restore discipline[.]" Hudson, supra, 503 U.S.
at 7, 112 S. Ct. at 999; see also Whitley v. Albers, 475
U.S. 312, 320-321, 106 S. Ct. 1078, 1085, 89 L. Ed. 2d 251
(1986)("[W]e think the question whether the measure taken
inflicted unnecessary and wanton pain and suffering
ultimately turns on "whether force was applied in a good
faith effort to maintain or restore discipline or
maliciously and sadistically for the very purpose of
causing harm.") In making this determination, the Court

considers the need for application of force, the relationship between the need and the amount of force used, the threat reasonably perceived, any efforts made to temper the severity of a forceful response, and the extent of injury suffered. Hudson, 503 U.S. at 7, 112 S. Ct. at 999, citing Whitley, 475 U.S. at 321, 106 S. Ct. at 1085; see also Campbell, *supra*, 169 F.3d at 1375("Hudson and Whitley outline five distinct factors relevant to ascertaining whether force was used 'maliciously and sadistically for the purpose of causing harm': (1) 'the extent of injury'; (2) 'the need for application of force'; (3) 'the relationship between that need and the amount of force used'; (4) 'any efforts made to temper the severity of a forceful response'; and (5) 'the extent of the threat to the safety of staff and inmates, as reasonably perceived by the reasonable officials on the basis of acts known to them.").

In the present case, although Defendants deny Stinson's allegations, for the purpose of this analysis, the Court accepts as true Stinson's assertion that during a pat search, officer Tyus struck him twice in the groin area and three times in the right rib area. While Stinson contends that he did not do anything to provoke Tyus' action, he does not deny that an unidentified inmate made a

comment about "nutting" in an officer's head, that he was in the area where the comment was made, that officers led him out of the area based upon suspicion that he had made the comment, that before placing Stinson in the health unit to speak with him about the comment, officer J. Johnson commenced to pat search him, that Tyus took over the pat search due to J. Johnson's back problem, and that searching the groin area as part of a pat search is appropriate to ensure the safety of inmates and staff.

Moreover, the medical records support the version of events claimed by Defendants and contradict Stinson's version. Stinson alleges he had visible injuries from being hit in the ribs and groin by Defendant Tyus. Specifically, Stinson states that on February 4, 2012, at approximately 12:40 a.m., Tyus struck him numerous times in the ribs "and then [Tyus] pulled on [Stinson's] pants" and *saw* that "the blows had caused [Stinson] injury" and Tyus then struck Stinson "in the testicles several times." (Doc. 1 at 4). However, a body chart was completed on Stinson at approximately 2:00 p.m. on February 4, 2012 and indicated "no distress" and "no physical marks [were] noted" on Stinson's body. (Doc. 46-2 at 3). The body chart confirms there were no bruises, swelling, or even red marks seen by the nurses when Stinson was examined. Stinson returned to

medical services the following day with the complaint that "[his] ribs [were] hurting." (Id. at 4). He listed his pain as a 7 on a scale of 1-10. (Id.). Again, however, there was "no [visible] bruising/injury" and "no grimacing noted" when the nurse pressed on his ribs. (Id.). Stinson was examined again on February 11 and 12, 2012, with complaints that his ribs and testicles were hurting and requested he "needed" something for the pain "ASAP." (Doc. 46-1 at 30, 51). Stinson was prescribed pain medication and since there were still no visible signs of injury, an x-ray of Stinson's ribs was ordered to discern any possible internal injury. (Id. at 30, 51).

The x-ray was conducted on February 13, 2012, and revealed Stinson's ribs were normal with no fracture or dislocation. (Id. at 24). A testicular ultrasound was also performed after Stinson's continued complaints of testicular pain, but this diagnostic test confirmed there were no injuries to Stinson. (Doc. 46-2 at 23). Stinson was subsequently seen by the medical staff five more times with complaints for rib and testicular pain and always with requests for pain medication but never was any injury seen, indicated, or diagnosed. (See 46-1 at 34-36, 39-40, 42-43, 45-50). Furthermore, during Stinson's annual medical assessment, performed on June 12, 2012, despite Stinson

having presented to the medical unit at least nine times in the previous four months with complaints of rib pain and testicular pain, when asked by the nursing staff if he had any medical complaints at that time, he stated he did not have any medical problems or issues.  (Doc. 46-1 at 8). Also incongruous with Stinson's months of presenting to the medical unit with testicular pain, he refused a testicular exam offered at his June 12, 2012 annual assessment.  (46-1 at 8; Doc. 46-2 at 45).

Thus, taking Stinson's assertions as true, the attack involved no more than a de minimis use of force. First, the objective medical evidence clearly demonstrates that there was a lack of serious injury.  Defendant Tyus has met his burden of showing that there is no genuine dispute about the lack of injuries, and Stinson has not rebutted that showing by designating specific facts beyond the pleadings. Second, the type of force allegedly used by Defendant Tyus, two punches to the groin area and three punches to the rib area in connection with a pat search was "not of a sort repugnant to the conscience of mankind." See Hudson, 503 U.S. at 10, 112 S. Ct. at 1000 (quotation marks omitted).

The Court is cognizant of the fact that the lack of injury does not preclude an Eighth Amendment claim; however, the evidence in this case simply does not support

an inference that the force was used in a wanton manner, for the malicious and sadistic purpose of causing harm. Rather, it appears by the undisputed record that any force used by Defendant Tyus was used in a "good-faith effort to maintain or restore discipline" after Tyus removed Stinson from Housing Unit B for suspicion of yelling a threatening statement to Officer Capps and later, during the pat search of Stinson, Tyus believed that Stinson was attempting to hide contraband on his body because Stinson shifted his weight around during the pat-down search. Furthermore, the lack of any sustained injury from the alleged punching, as supported by the medical records and previously discussed, correlates that any force used on Stinson was *de minimis* since it resulted in no injuries to Stinson. Therefore, Stinson has failed to support his Eighth Amendment excessive force claim against Defendant Tyus. Taking the record as whole, a trier of fact could not find for Stinson and, therefore, summary judgment should be granted in favor of Defendant Tyus and his claim subject to dismissal. <u>See Smith v. Secretary</u>, <u>Department of Corrections</u>, 524 Fed. Appx. 511, 2013 U.S. App. LEXIS 15198, 2013 WL 3838090 (11th Cir. 2013)(Court held that the plaintiff's claim that officers twisted his arms upwards while pressing him against the wall away from the surveillance cameras and

caused pain in his shoulder and right arm, a wrist injury, minor bruises to his eye and a swollen face were not sufficient to establish an excessive force claim given lack of serious injury, de minimis use of force and fact that the type of force used was "not of a sort repugnant to the conscience of mankind"); Al-Ameen v. Chapman, 2013 U.S. Dist. LEXIS 135777 (M.D. Ala. Aug. 30, 2013)(where plaintiff, who had 15 stitches in his neck and had his hands cuffed behind his back, alleged that the defendant punched him very hard in the back of his head with his fist in the infirmary, the Court held that the act of striking the defendant once time on the back of his head, causing no injury and necessitating no treatment, was not an action "repugnant to the conscience of mankind"); Barley v. Jamison, 2013 U.S. Dist. LEXIS 183826 (M.D. Ala. Nov. 7, 2013)(court held that the plaintiff's claim that the defendant subjected him to excessive force when during a routine shakedown, the defendant kicked the plaintiff's legs apart, pinched and grabbed the plaintiff's stomach, and grabbed and yanked his genitals until he urinated on himself did not establish an excessive force claim where the injuries were minimal, the amount of force used was de minimis at best, and the force used was not "repugnant to the conscious of mankind".)

**B.    Stinson's Failure to Intervene Claim.**

Stinson claims Defendants J. Johnson, R. Johnson, Broadhead, Kimbrel, and Leggett were deliberately indifferent based on their alleged failure to intervene in or stop the alleged assault of Stinson by Defendant Tyus. However, Stinson has failed to set forth adequate facts to establish such a claim.

The Eighth Amendment is only violated by "[a] prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate[.]" Farmer, 511 U.S. at 828. "Prison correctional officers may be held directly liable under § 1983 if they fail or refuse to intervene when a constitutional violation occurs in their presence. . . . However, in order for liability to attach, the officers must have been in a position to intervene." Terry v. Bailey, 376 F. App'x 894, 896 (11th Cir. 2010) (citing Ensley v. Soper, 142 F.3d 1402, 1407 (11th Cir. 1998)). An officer who fails to intervene in a fight can only be held liable if he "was physically able and had a realistic chance to intervene and act in time to protect the inmate Plaintiff." Glispy v. Raymond, 2009 U.S. Dist. LEXIS 77100, 2009 WL 2762636 (S.D.Fla. Aug. 28, 2009) (citing Ensley, 142 F.3d at 1407; Byrd v. Clark, 783 F.2d 1002 (11th Cir. 1986)).

However, if no excessive use of force takes place, an officer has no duty to intervene. Crenshaw v. Lister, 556 F.3d 1283, 1294 (11th Cir. 2009); McBride v. Rivers, 170 F. App'x 648, 658 (11th Cir. 2006) (defendant could not be liable for failing to intervene after court determined no excessive force had been used). Inasmuch as the Court has concluded that no reasonable jury could find that Defendant Tyus used excessive force against Stinson, no reasonable jury could find that Defendants J. Johnson, R. Johnson, Broadhead, Kimbrel, or Leggett were liable for failing to intervene.  Thus, summary judgment should be granted for Defendants J. Johnson, Broadhead, Kimbrel, Leggett, and R. Johnson for Stinson's claims of failure to intervene, and Stinson's claims of failure to intervene should be dismissed.

**C.   Stinson's Failure Protect Claim.**

The Complaint alleges that Defendants Warden Patterson and Associate Commissioner for the Alabama Department of Corrections failed to protect him because they knew assaults and excessive force were used by officers at Holman and Defendants Patterson and DeLoach allowed such uses of force to continue, and Defendants failed to respond

to his complaints regarding the alleged assault on February 4, 2012. (Doc. 1 at 6-7).

Supervisory officials cannot be held liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior*. Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003). "In order to prevail on the merits in a § 1983 action against Defendants in their individual capacity, Stinson generally must show that the defendant is personally involved in acts or omissions that resulted in the constitutional deprivation. Hale v. Tallapoosa County, 50 F.3d 1579, 1582 (11th Cir. 1995). Supervisory liability can also arise under § 1983 when there is a "causal connection between the actions of the supervising official and the alleged constitutional deprivation." Braddy v. Florida Dep't of Labor and Employment Security, 133 F.3d 797, 801-802 (11th Cir. 1998)(citing Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)). The necessary causal connection "can be established when a history of widespread abuse puts the reasonable supervisor on notice of the need to correct the alleged deprivation, and he fails to do so. The deprivations that constituted widespread abuse sufficient to notify the supervising official must be obvious,

flagrant, rampant, and of continued duration, rather than isolated occurrences." Id.

The undisputed evidence shows that neither Defendant Patterson nor Defendant DeLoach personally participated in the incident made the basis of this lawsuit, nor did either have prior knowledge of the facts to put him on notice of any need to intervene prior to the incident on February 4, 2012. Furthermore, Stinson has not demonstrated an affirmative causal connection between Patterson's or DeLoach's actions and the alleged constitutional violation by Defendant Tyus. Nor has Stinson alleged any details regarding a history of widespread unconstitutional uses of force that would have put Defendants on notice of the need to correct the deprivation. Therefore, Stinson has failed to carry his burden of producing some evidence that Defendants Patterson and DeLoach were personally involved in any way in the alleged February 4, 2012 assault or that they are liable for failing to protect him from the alleged assault.

Stinson also claims, but fails to establish, that Defendants violated his Fourteenth Amendment rights by not investigating the alleged assault. The evidence in the record shows, and Stinson has not objected to or argued against it, that "[a] complete investigation into the

accusations made by inmate Stinson was conducted by Captain James Powers. During the course of the investigation Captain Powers found there to be no truth to the accusations made by inmate Stinson." (Doc. 23-6 at 1). Based on the internal investigation and medical record establishing no physical injury to Stinson, Defendant Patterson denies ever violating Stinson's Eighth and Fourteenth Amendment rights. (Id. at 2). Additionally, Defendant DeLoach avers he has "no knowledge of any abuse or excessive use of force by any staff member against [Stinson]. As a matter of practice and policy, any complaint of inmate abuse is investigated thoroughly by the Alabama Department of Corrections." (Doc. 23-7 at 1).

Stinson has not objected to these affidavits or produced any evidence or statements to contradict them despite having moved for the production of additional discovery and having his motion granted by this Court. (Docs. 40, 42). Therefore, as the record stands before the Court, it is undisputed that Defendant Patterson investigated Stinson's complaint and found no merit to his accusations, and Defendant DeLoach was never apprised of the February 4, 2012 incident; therefore, Defendants should be granted summary judgment on the claims against them as

Stinson has failed to carry his burden of showing any dispute for a fact finder at trial.

Moreover, as stated above, the Court finds no constitutional violation of excessive force used by Defendant Tyus on February 4, 2012 for which Defendants Patterson and DeLoach could be held liable and, for this reason as well, the Court concludes that the Stinson's claim(s) against Defendants should be dismissed.

**D.  Stinson's Denial of Medical Care Claim.**

Next, Stinson claims that Defendants violated his rights under the Eighth Amendment by failing to provide proper medical treatment to him after Defendant Tyus hit him in the ribs and groin.  (Docs. 1; 52).  However, Stinson does not allege that he ever requested medical attention while being held in the HHC or upon being released from the HHC.  (Doc. 1 at 4-5).  Stinson does claim that, after being released from the HHC, he subsequently informed Captain Howard that he had been assaulted earlier that morning and did not receive medical attention. (Id. at 4).  Immediately upon hearing this accusation, Captain Howard ordered that Stinson receive a body chart, and Stinson was taken to the medical unit, examined by a nurse, and received a body chart at

approximately 2:00 p.m. on February 4, 2012.  (Id.; Doc.
46-2 at 3).

"The Eighth Amendment's proscription of cruel and
unusual punishments prohibits prison officials from
exhibiting deliberate indifference to prisoners' serious
medical needs." Campbell v. Sikes, 169 F.3d 1353, 1363
(11th Cir. 1999) (citing Estelle v. Gamble, 429 U.S. 97,
104, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)).  In order to
demonstrate a denial of medical care in violation of the
Eighth Amendment, Stinson must prove both an objective and
subjective component.  To meet the objective element,
Stinson first must demonstrate the existence of an
"objectively serious medical need." Farrow v. West, 320
F.3d 1235, 1243 (11th Cir. 2003).  A serious medical need
is "'one that has been diagnosed by a physician as
mandating treatment or one that is so obvious that even a
lay person would easily recognize the necessity for a
doctor's attention.'" Id. (quoting Hill v. Dekalb Reg'l
Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994)).  "In
either of these situations, the medical need must be one
that, if left unattended, pos[es] a substantial risk of
serious harm." Id. (internal quotation marks and citation
omitted).

In order to meet the subjective requirement of an Eighth Amendment denial of medical care claim, Stinson must further demonstrate "deliberate indifference" to a serious medical need. Farrow, 320 F.3d at 1243.

> In Estelle, the Supreme Court established that "deliberate indifference" entails more than mere negligence. Estelle, 429 U.S. at 106, 97 S. Ct. 285; Farmer, 511 U.S. at 835, 114 S. Ct. 1970. The Supreme Court clarified the "deliberate indifference" standard in Farmer by holding that a prison official cannot be found deliberately indifferent under the Eighth Amendment "unless the official *knows of* and *disregards an excessive risk to inmate health or safety*; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837, 114 S. Ct. 1970. In interpreting Farmer and Estelle, the Eleventh Circuit explained in McElligott that "deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." McElligott, 182 F.3d at 1255; Taylor, 221 F.3d at 1258 (stating that defendant must have subjective awareness of an "objectively serious need" and that his response must constitute "an objectively insufficient response to that need").

Farrow, 320 F.3d at 1245-46. In addition, where a plaintiff complains of delay in medical treatment, he has the burden of establishing that he suffered a significant effect from the delay. See Hill, 40 F.3d at 1188. "An inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical

evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." Id.

In analyzing whether or not Stinson suffered a serious medical need that required immediate medical attention, the Court relies on the medical record and the facts presented in the light most favorable to the nonmovant, Stinson. Stinson states that there was visible injury on his ribs from "the blows" of Tyus, and that Tyus saw these marks and then proceeded to strike Stinson in the testicles several times. (Doc. 1 at 4). However, when Stinson was examined hours later, the examining nurse noted no visible signs of injury, no swelling, no bruising, no redness. If an injury cannot be detected by medical staff the day of the alleged assault or any time over the next five months, it cannot be inferred and the medical records do not indicate that any injury Stinson may have suffered was a "serious medical need." Over the five-month period, from February 2012 through July 2012, that Stinson was seen by the medical staff at Holman, he was never diagnosed by a physician as needing treatment of any kind. Instead, Stinson was prescribed pain medication at his request for subjective symptoms. The record also lacks any evidence that Stinson's alleged injury was "so obvious that even a lay person would

easily recognize the necessity for a doctor's attention."
Hill, 40 F.3d at 1187. Defendants report there was no
injury to Stinson's person, no inmate reports any visible
injury to Stinson, and even the diagnostic tests run on
Stinson report no injuries. Furthermore, while Stinson
continued to request sick call appointments with complaints
of pain and requests for pain medication from the date of
the incident through July 15, 2012, his complaints never
changed, his condition never worsened, and there was never
a medical risk of harm to Stinson. Therefore, Stinson has
failed to prove the objective component to establish a
denial of medical care in violation of the Eighth
Amendment. Farrow, 320 F.3d at 1243.

Although Stinson has provided no evidence
demonstrating that he suffered any significant effect from
the alleged delay in medical treatment, assuming *arguendo*,
for purposes of this motion, that Stinson had demonstrated
an "objectively serious medical need" satisfying the first
component of his Eighth Amendment claim, Stinson would fail
to demonstrate the necessary subjective element of
Stinson's claim, that is, whether Defendants were
deliberately indifferent to Stinson's serious medical need.

A review of Stinson's medical records shows that he presented to the prison health care unit around 2:00 p.m. on February 4, 2012, the day of the altercation with Defendant Tyus. (Doc. 46-2 at 3). After physical examination, the treating nurse completed a "body chart" on Stinson and noted "no distress" or "no physical marks" on Stinson's body. (Id.). The record further indicates that Stinson was examined the next day and "no [visible] bruising/injury" and "no grimacing noted" when the nurse pressed on his ribs. (Id.). Stinson was subsequently seen by a nurse on February 11, 2012, February 12, 2012, March 2, 2012, March 6, 2012, March 21, 2012, April 19, 2012, May 22, 2012, and July 15, 2012, for complaints of rib and testicle pain but there was never any swelling or visible signs of injury found, and each sick call form or complaint included a request for more pain medication, which was always prescribed. (Doc. 46-1 at 30, 45-48, 51; Doc. 46-2 at 1-2, 51).

In addition, diagnostic tests were completed that indicate Stinson suffered no injury. An x-ray of Stinson's right-side rib cage was performed on February 13, 2012, and revealed Stinson's ribs were normal with no fracture or dislocation. (Doc. 46-2 at 24). Also, an ultrasound of Stinson's testicles was conducted on March 19, 2012, and

revealed no abnormalities relevant to the February 4, 2012 alleged assault. (Id. at 23). Stinson made no further complaints of rib or testicular pain after July 15, 2012. (See Doc. 46-1, Doc. 46-2).

In this action, Stinson claims that his constitutional rights were violated when he was not given a "body chart" until later in the afternoon of February 4, 2012, and that he suffered lasting injuries from the assault. (Doc. 1 at 4, 6-7). Although Stinson does not expressly articulate that Defendants were "deliberately indifferent" to his serious medical needs, this Court, construing Stinson's Complaint liberally, will assume that the gist of Stinson's allegation is that Defendants were "deliberately indifferent" to his medical needs. Stinson's claim is not borne out by the record.

In order to constitute "deliberate indifference," Defendants must have known of and disregarded an excessive risk to Stinson's health. Farrow, 320 F.3d at 1245. As best the Court can discern, Stinson complains that he did not receive the "body chart" he believed he required until later in the day on February 4, 2012, when he complained of the alleged assault to Captain Howard. The undisputed evidence however demonstrates that the same day of the incident, Stinson was examined by a nurse, and there were

no injuries visible on Stinson's body. Stinson does not dispute the accuracy of the records submitted by Defendants, nor does he deny that he was treated by a prison nurse on multiple occasions. Furthermore, he received two diagnostic tests, that were evaluated by physicians, indicating no injury or damage to his ribs or testicles, and Stinson was prescribed pain medication for his subjective complaints of pain.

Stinson has not proffered any probative evidence which suggests deliberate indifference on the part of Defendants or that the medical care he received was inadequate. First, there is no evidence that Tyus or any named defendant was responsible for Stinson's medical care. Moreover, Stinson has not submitted any "verifying medical evidence" showing that the half a day delay in medical treatment resulted in the diminishment of his physical or mental health. Hill, 40 F.3d at 1188. The absence of such evidence further undermines a finding that Defendants were deliberately indifferent to Stinson's serious medical needs.

While "[d]elay in access to medical attention can violate the Eighth Amendment . . . when it is tantamount to unnecessary and wanton infliction of pain," Hill, 40 F.3d at 1187, the record in this case simply does not show such. The record reflects that Stinson was given medical care on

the day of the incident with Defendant Tyus, February 4, 2012 and then again on February 11, 2012, February 12, 2012, March 2, 2012, March 6, 2012, March 21, 2012, April 19, 2012, May 22, 2012, and July 15, 2012, and received an x-ray and ultrasound on February 13, 2012 and March 19, 2012, respectively. (Doc. 46-2 at 23-24).

"When a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation." Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989). "[D]elay in medical treatment must be interpreted in the context of the seriousness of the medical need, deciding whether the delay worsened the medical condition, and considering the reason for delay." Hill, 40 F.3d at 1189.

Considering all of the circumstances surrounding the treatment that Stinson received for his medical problems, along with Stinson's vague and conclusory allegations, the undersigned finds that Stinson has not presented facts which suggest that Defendants were deliberately indifferent to Stinson's medical needs following his pat search by Defendant Tyus or his release from HHC on February 4, 2012. To the contrary, the evidence reflects that prison staff, with the aid of the medical staff at Holman, responded to the medical complaints and needs presented by Stinson. Thus, Stinson has failed to establish the subjective

element of his denial of medical care claim. Because Stinson has failed to establish both the objective and subjective elements of his Eighth Amendment medical care claim, the Court has determined *sua sponte* that the evidence demonstrates that there is no genuine issue of material fact and that Defendant is entitled to judgment as a matter of law on this claim as well.

**E.  Stinson's Claims For Compensatory and Punitive Damages Are Barred By 42 U.S.C. § 1997e(e)**

Assuming arguendo that Stinson could survive summary judgment on his federal claims, his claims for compensatory and punitive damages are barred by 42 U.S.C. § 1997e(e). The Prison Litigation Reform Act ("PLRA") provides, "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). "[T]he phrase 'Federal civil action' means all federal claims, including constitutional claims." Napier v. Preslicka, 314 F.3d 528, 532 (11th Cir. 2002). Although § 1997e(e) does not define physical injury, the Eleventh Circuit has concluded that, to satisfy the statute, "the physical injury must be more than de minimis, but need not be significant." Harris v. Garner, 190 F.3d

36

1279, 1286 (11th Cir. 1999), *vacated, in part, on other grounds*, 216 F.3d 970 (11th Cir. 2000) (en banc) (concluding that a "dry shave" was not the kind of physical injury cognizable under § 1997e(e)); see also *e.g.,* Quinlan v. Pers. Transp. Servs Co., 329 F. App'x 246, 249 (11th Cir. June 5, 2009) (concluding that temporary chest pain, headache, difficulty breathing and periodic episodes of back pain, none of which required immediate medical attention or evidenced physical injury besides discomfort, did not surmount § 1997e(e)'s bar).

As noted above, the medical evidence in this case fails to reflect that Stinson suffered any physical injury in connection with the alleged assault by Defendant Tyus. Simply put, although Stinson was examined by the medical staff less than 24 hours after the alleged assault, no injury of any kind was noted. Specifically, the examining nurse noted no visible signs of injury, no swelling, no bruising or redness. The undisputed medical evidence completely refutes Stinson's damages' claim and demonstrates that he did not suffer any jury due to the alleged assault, much less a physical injury that is more than de minimis. Accordingly, he cannot recover compensatory or punitive damages on any claim.

**F.   Stinson's State Law Assault Claim.**

The Court has determined that summary judgment is due to be granted as to Stinson's federal claims; the only remaining claim in this action is Stinson's allegation that Defendant Tyus assaulted him in violation of the laws of Alabama. (Doc. 1 at 6). Stinson has not pleaded a basis for original jurisdiction over this claim and none is apparent from the record. Rather, the Court has exercised supplemental jurisdiction over this claim pursuant to 28 U.S.C. § 1367(a).

It is fundamental that where original federal jurisdiction lies, federal district courts enjoy "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). But Congress has conferred upon district courts the discretion to "decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction." § 1367(c)(3); see also Hicks v. Moore, 422 F.3d 1246, 1255 n.8 (11th Cir. 2005) (where appeals court terminates all federal claims, leaving only certain state-law claims, "[w]e allow the district court to exercise its discretion .

. . to decide whether or not to consider Plaintiff's state-law claims on remand"); Cook *ex rel*. Estate of Tessier v. Sheriff of Monroe Cnty., Fla., 402 F.3d 1092, 1123 (11th Cir. 2005) ("Because no basis for original federal jurisdiction presently exists, the district court has the discretion to decline to exercise supplemental jurisdiction."); Higdon v. Jackson, 393 F.3d 1211, 1221 (11th Cir. 2004) (explaining that, after dismissal of all claims over which it has original jurisdiction, district court may either decline or continue to exercise supplemental jurisdiction); Crosby v. Paulk, 187 F.3d 1339, 1352 (11th Cir. 1999) ("A district court has discretion to dismiss state-law claims when all claims over which it has original jurisdiction have been dismissed.") (citation omitted). The question presented, then, is whether the Court should exercise its discretion in favor of or against the continuing exercise of supplemental jurisdiction over Stinson's state-law cause of action, now that the federal claims have been excised from the case.

Although the Court does have discretion in this area, there is a compelling strand of Supreme Court and Eleventh Circuit authority that "encourage[s] district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial." Raney

v. Allstate Ins. Co., 370 F.3d 1086, 1088-89 (11th Cir.
2004); see also United Mine Workers of America v. Gibbs,
383 U.S. 715, 726, 86 S. Ct. 1130, 1139, 16 L.Ed.2d 218
(1966) ("Needless decisions of state law should be avoided
both as a matter of comity and to promote justice between
the parties, by procuring for them a surer-footed reading
of applicable law. Certainly, if the federal claims are
dismissed before trial, even though not insubstantial in a
jurisdictional sense, the state claims should be dismissed
as well.") (footnote omitted); Mergens v. Dreyfoos, 166
F.3d 1114, 1119 (11th Cir. 1999) (noting that "if the
federal claims are dismissed prior to trial, Gibbs strongly
encourages or even requires dismissal of state claims")
(citation omitted); Baggett v. First Nat. Bank of
Gainesville, 117 F.3d 1342, 1353 (11th Cir. 1997) (opining
that "[s]tate courts, not federal courts, should be the
final arbiters of state law" and that "the state law claims
remaining in this action are best resolved by the Georgia
courts … especially … where the Court is dismissing
Plaintiffs' federal law claim prior to trial"); Eubanks v.
Gerwen, 40 F.3d 1157, 1161-62 (11th Cir. 1994) ("when the
federal-law claims have dropped out of the lawsuit in its
early stages and only state-law claims remain, the federal

court should decline the exercise of jurisdiction by dismissing the case without prejudice") (citation omitted).

To be sure, this appellate guidance advocating the declination of supplemental jurisdiction over state-law claims following pretrial dismissal of all original-jurisdiction claims is neither absolute nor inflexible. In determining whether or not to exercise § 1367 jurisdiction in such a situation, "the judge should take into account concerns of comity, judicial economy, convenience, fairness and the like." Lewis v. City of St. Petersburg, 260 F.3d 1260, 1267 (11th Cir. 2001) (citing Crosby, 187 F.3d at 1352); see also Cook, 402 F.3d at 1123 (similar); Shotz v. City of Plantation, Fla., 344 F.3d 1161, 1185 (11th Cir. 2003) (similar). The Court finds that none of those factors warrant the continued exercise of supplemental jurisdiction here. Because Alabama state courts are the final arbiters of Alabama law, and Stinson's federal claims have been dismissed in this litigation on a motion for summary judgment, considerations of comity and judicial economy as described in Gibbs and its progeny weigh in favor of leaving plaintiff's state-law claims for Alabama courts to decide. Nor would it be inconvenient or unfair for this litigation to proceed in state court, rather than federal

court. It is this Court's determination that concerns of comity, judicial economy, convenience, fairness and the like do not warrant the continued exercise of supplemental jurisdiction in this case, the undersigned exercises her discretion under § 1367(c)(3) to decline supplemental jurisdiction over the remaining state-law claim.

Accordingly, the Court makes no ruling as to Stinson's state law claim against Tyus, as set out in the Complaint (Doc. 1 at 6), and instead finds that it is due to be dismissed without prejudice. See, e.g., Ingram v. Sch. Bd. of Miami-Dade Cnty., 167 F. App'x 107, 109 (11th Cir. 2006) (per curiam) ("When a court decides not to exercise supplemental jurisdiction under § 1367(c)(3) because only state claims remain, the proper action is a dismissal without prejudice so that the complaining party may pursue the claim in state court."); Crosby v. Paulk, 187 F.3d 1339, 1352 (11th Cir. 1999) (If a federal court decides to dismiss state-law claims, "then they should be dismissed without prejudice so that the claims may be refiled in the appropriate state court.").

## V.    CONCLUSION

For the reasons set forth above, the undersigned concludes that Defendants Kenneth Tyus, Associate Commissioner of Operations James DeLoach, Warden Tony Patterson, III, Russell Johnson, Christopher Kimbrel, Joel Broadhead, David Leggett, Johnny L. Johnson are entitled to summary judgment in their favor on all claims asserted against them by Stinson.  Accordingly, it is recommended that Defendants' Motion for Summary Judgment be **GRANTED,** that this action be **DISMISSED** with prejudice, and that judgment be entered in favor of Defendants and against Plaintiff Reginald Stinson on all federal claims.  It is further recommended that Plaintiff Reginald Stinson's state-law assault claim against Kenneth Tyus **DISMISSED** without prejudice.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court.  *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(B); S.D. ALA. L.R.72.4.  The parties should

note that under Eleventh Circuit precedent, "the failure to object limits the scope of [] appellate review to plain error review of the magistrate judge's *factual findings*." Dupree v. Warden, Attorney Gen., State of Ala.*,* 715 F.3d 1295, 1300 (11th Cir. 2011). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

      DONE this the **12th** day of **September, 2014.**

                      **/s/ SONJA F. BIVINS**
                  **UNITED STATES MAGISTRATE JUDGE**